**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BIENVENIDO CASILLA, | : | **Hon. Freda L. Wolfson** |
| | : | |
| Petitioner, | : | Civil No. 08-3546 (FLW) |
| | : | |
| v. | : | |
| | : | |
| MICHELLE R. RICCI, et al., | : | **O P I N I O N** |
| | : | |
| Respondents. | : | |
| | : | |

**APPEARANCES**:

> BIENVENIDO CASILLA, #355308C
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
> Petitioner Pro Se

> FRANK J. DUCOAT, Deputy Attorney General
> ANNE MILGRAM, ATTORNEY GENERAL OF NEW JERSEY
> Division of Criminal Justice, Appellate Bureau
> P.O. Box 086
> Trenton, New Jersey  08625
> Attorneys for Respondents

**WOLFSON**, District Judge

Bienvenido Casilla ("Petitioner") filed a Petition for a Writ of Habeas Corpus, pursuant

to 28 U.S.C. § 2254, challenging a judgment of conviction entered in the Superior Court of New

Jersey, Middlesex County, on July 10, 2000, and amended on January 23, 2004, after a jury

found him guilty of first-degree murder, felony murder, kidnapping, and related crimes.

Respondents filed an Answer arguing that the Petition should be dismissed on the merits.

Petitioner filed a Reply.  For the reasons expressed below, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

On June 2, 2000, a jury sitting in the Superior Court of New Jersey, Middlesex County, Law Division, found Petitioner guilty of the first-degree murder of Eddie Acevedo, kidnapping of Acevedo, felony murder of the same victim, racketeering, conspiracy to commit racketeering, conspiracy, attempted theft by extortion, theft by extortion, terroristic threats, possession of a weapon for an unlawful purpose, two counts of tampering with evidence, and two counts of hindering apprehension or prosecution.  See State v. Casilla, Docket No. A-1274-00T4 slip op. at pp. 1-2 (N.J. Super. Ct., App. Div., Aug. 18, 2003).  By Order filed July 10, 2000, the Law Division sentenced Petitioner to an aggregate term of 70 years in prison, with 51.25 years of parole ineligibility.  Id.  at 2.

The Appellate Division summarized the facts as follows:

> The State's version of the offenses committed by defendant was presented through the testimony of one of his confederates, his stepson, Juan Machado, who testified for the State pursuant to a plea bargain . . . .  Machado . . . learned that defendant, together with codefendant Tony Mota, was involved in the collection of drug-related debts owed to Colombian drug dealers. Machado acted as a translator for defendant and Mota, who did not speak English, in some of these transactions.
>
> In late November, co-defendants Mota and Machado met with a Colombian drug dealer called "John" in a restaurant in New York City.  At that meeting, defendant and Mota agreed to help collect $180.000 that the victim, Eddie Acevedo, owed the Colombian drug dealers, for which they were to receive 30% of the proceeds . . . . On the afternoon of December 13, 1997, defendant, Mota, Machado and other persons cut-off Acevedo's car in Manhattan,

put him into defendant's car, and drove him to defendant's home in Edison.  Machado followed in Acevedo's car.

During the next twenty-four hours, defendant, Mota and Machado made a series of telephone calls to Acevedo's family and friends, demanding payment of a ransom and threatening to kill Acevedo if the money was not paid . . . .  Although Acevedo's family and friends were not able to raise the entire amount of the ransom, they were able to raise $23,000.  Acevedo's wife offered also to give her car and a Rolex watch to obtain Acevedo's return.  Defendant and his confederates agreed to accept this ransom offer.  Pursuant to this agreement, Acevedo's wife left the car, money and watch on a Manhattan street, and paged the kidnappers to tell them where the ransom could be picked up.  Defendant and Mota retrieved the car from the drop site, removed the money and watch, and abandoned the car in a Manhattan parking garage.  Defendant, Machado and Mota split the $23,000 three ways and gave the watch to the Colombian drug dealers.

When Acevedo failed to return home by the morning following payment of the ransom, his wife called the police and reported the kidnapping . . . .  Acevedo's wife and her cousin, Carlos Pacheo, gave the New York City police the telephone numbers they had used to communicate with the kidnappers.  In addition, Pacheo gave the police permission to monitor and trace any telephone calls made to his cell phone.  Acevedo subsequently called Pacheo's cell phone number several times, asking for more money and/or cocaine as additional ransom to gain his release.

On December 16th, the Colombian drug dealers told defendant and Mota that the police had recovered the car Acevedo's wife had given them as part of the ransom.  They also told Mota that Acevedo was a police informant and should be killed.

Later that day, defendant, Mota and Machado put Acevedo in his car.  According to Machado, Mota started to drive Acevedo's car along Route 280, and Machado drove defendant's car about a quarter-mile ahead of him.  Defendant sat in the back seat of Acevedo's car, directly behind Acevedo.  After Machado saw Acevedo's car first swerve back and forth and then slow down, he stopped and began driving backward on the shoulder.  As he approached Acevedo's car, he saw defendant and Mota jump out and start running towards them.  Acevedo's car burst into flames as

3

> Mota and defendant got into defendant's car.  The police
> subsequently found Acevedo's burning White Montero, his body
> still inside.  An autopsy indicated he had been killed by two
> gunshots before the fire . . .
>
> On April 8, 1998, the New Jersey State police and New York City
> police arrested defendant in Manhattan.  After the police disclosed
> some of the evidence they had obtained against him, defendant
> admitted his involvement in drug trafficking and in Acevedo's
> kidnapping.  However, defendant claimed he had objected to
> killing Acevedo and was not in the car at the time of the murder.
> According to defendant, Machado had been the driver of
> Acevedo's car and Mota was behind him in the rear seat . . . .  The
> trial court denied defendant's pretrial motion to suppress evidence
> of his statement.

State v. Casilla, Docket No. A-1274-00T4 slip op. at pp. 2-6.

Petitioner appealed.  In an opinion filed August 1, 2003, the Appellate Division of the

New Jersey Superior Court affirmed the convictions and sentences for murder and hindering

apprehension or prosecution, vacated the conviction for first-degree kidnapping and remanded to

the trial court to sentence Petitioner for second-degree kidnapping, and reversed the convictions

for racketeering and theft by extortion and remanded to the trial court for a retrial of those

charges.  State v. Casilla, Docket No. A-1274-00T4 slip op. at p. 32.  On November 18, 2003, the

New Jersey Supreme Court denied certification.  See State v. Casilla, 178 N.J. 251 (2003)

(table).  By amended judgment filed January 23, 2004, Judge Natal amended the conviction on

count six to kidnapping in the second-degree and imposed a 10-year term, with an 85% period of

parole ineligibility, to run consecutive to the original murder sentence.  On February 4, 2004, the

State sent a letter to the trial court stating its intention not to retry Petitioner on the racketeering

counts (counts one and two) and the attempted theft by extortion count (count nine).  On

September 30, 2004, the Appellate Division affirmed the kidnapping sentence.

4

On March 23, 2004, Petitioner filed a pro se petition for post-conviction relief in the Law Division.  By Order filed January 3, 2006, Superior Court Judge Frederick P. DeVesa denied post-conviction relief without conducting an evidentiary hearing.  Petitioner appealed, and in an opinion filed June 11, 2007, the Appellate Division affirmed the order denying post-conviction relief.  See State v. Casilla, Docket No. A-2994-05T4 slip op. (N.J. Super. Ct., App. Div., June 11, 2007).  On September 26, 2007, the New Jersey Supreme Court denied certification.  See State v. Martin, 192 N.J. 482 (2007) (table).

The Clerk received Petitioner's undated § 2254 Petition July 14, 2008.  After this Court notified Petitioner of his rights pursuant to Mason v. Myers, 208 F. 3d 414 (3d Cir. 2000), Petitioner elected to proceed with the Petition.  The Petition presents the following grounds:

> Ground One: THE TRIAL COURT FAILED TO SUBMIT THE ELEMENT OF JURISDICTION TO THE JURY DESPITE SUBSTANTIAL EVIDENCE THAT MOST OF THE CRIMINAL ACTIVITY TOOK PLACE IN NEW YORK STATE.  THIS VIOLATED PETITIONER'S RIGHT TO DUE PROCESS, AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS THERETO.
>
> Ground Two: THE TRIAL COURT COMMITTED REVERSIBLE ERROR ON THE MURDER COUNT WHEN, OVER OBJECTION, IT RESPONDED TO A JURY QUESTION WITH A SUPPLEMENTAL INSTRUCTION THAT DEFENDANT COULD BE FOUND TO BE AN ACCOMPLICE BASED UPON HIS ACTIONS AFTER THE MURDER.  THIS VIOLATED PETITIONER'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AMENDMENTS THERETO.
>
> Ground Three: BECAUSE THE MONITORING POLICE FAILED TO MAKE REASONABLE EFFORTS TO AVOID INTERCEPTING TELEPHONE CALLS FROM ONE OUT-OF-STATE PHONE TO ANOTHER OUT-OF-STATE PHONE, THE

5

TRIAL COURT SHOULD HAVE GRANTED DEFENDANT'S
MOTION TO SUPPRESS THE WIRETAPS.  THIS VIOLATED
PETITIONER'S RIGHT TO A FAIR TRIAL, AND DUE
PROCESS, AS GUARANTEED BY THE UNITED STATES
CONSTITUTION, AND THE FIFTH AND FOURTEENTH
AMENDMENTS THERETO.

Ground Four: DEFENSE COUNSEL'S FAILURE TO MOVE TO
SUPPRESS DEFENDANT'S CUSTODIAL STATEMENTS AND
THE PHYSICAL AND TESTIMONIAL EVIDENCE DERIVED
THEREFROM AS ILLEGAL FRUITS, IN VIEW OF THE
STATE'S FAILURE TO MEET ANY ONE OF THE ELEVEN
RECOGNIZED EXCEPTIONS TO A WARRANTLESS
ARREST, DENIED DEFENDANT OF HIS RIGHTS AGAINST
ILLEGAL SEARCHES AND SEIZURES, TO REMAIN SILENT
AND TO A FAIR TRIAL.

Ground Five: PETITIONER'S CONVICTION WAS OBTAINED
AS THE RESULT OF INEFFECTIVENESS OF COUNSEL AT
TRIAL.  THIS VIOLATED PETITIONER'S RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED
BY THE UNITED STATES CONSTITUTION, AS THE FIFTH
AND FOURTEENTH AND SIXTH AMENDMENTS THERETO.

Ground Six: PETITIONER'S CONVICTION WAS OBTAINED
AS THE RESULT OF INEFFECTIVENESS OF COUNSEL AT
TRIAL.  THIS VIOLATED PETITIONER'S RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED
BY THE UNITED STATES CONSTITUTION, AND THE FIFTH
AND FOURTEENTH AND SIXTH AMENDMENTS THERETO.

Ground Seven: PETITIONER'S CONVICTION WAS
OBTAINED AS THE RESULT OF INEFFECTIVENESS OF
COUNSEL AT TRIAL.  THIS VIOLATED PETITIONER'S
RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS
GUARANTEED BY THE UNITED STATES CONSTITUTION,
AND THE FIFTH AND FOURTEENTH AND SIXTH
AMENDMENTS THERETO.

Ground Eight: THE FAILURE OF THE PROSECUTOR NOT TO
INSTRUCT ON PROBABLE CAUSE DESTROYED THE
PURPOSE FOR THE GRAND JURY'S EXISTENCE.  THIS
VIOLATED PETITIONER'S DIGHT TO DUE PROCESS, AS

6

GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AMENDMENTS THERETO.

Ground Nine: THE PROSECUTOR'S FAILURE TO PRESENT EXCULPATORY EVIDENCE VIOLATED PETITIONER'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AMENDMENTS THERETO.

Ground Ten: PETITIONER'S CONVICTION WAS OBTAINED AS THE RESULT OF INEFFECTIVENESS OF COUNSEL AT TRIAL.  THIS VIOLATED PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AND SIXTH AMENDMENTS THERETO.

Ground Eleven: PETITIONER'S CONVICTION WAS OBTAINED AS THE RESULT OF INEFFECTIVENESS OF COUNSEL ON APPEAL.  THIS VIOLATED PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AND SIXTH AMENDMENTS THERETO.

Ground Twelve: PETITIONER'S CONVICTION WAS OBTAINED AS THE RESULT OF INEFFECTIVENESS OF COUNSEL ON APPEAL.  APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO PROTECT APPELLANT'S RIGHTS ON APPEAL. THIS VIOLATED PETITIONER'S RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AND SIXTH AMENDMENTS THERETO.

Ground Thirteen: THE REVIEWING COURT ERRED IN DENYING APPELLANT'S POST-CONVICTION RELIEF SINCE THE CONVICTION WAS SECURED IN VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL, AT TRIAL AND ON HIS DIRECT APPEAL TO THE APPELLATE DIVISION.

Ground Fourteen: THE REPRESENTATION BY PCR COUNSEL
CONSTITUTED A "COMPLETE DENIAL OF COUNSEL."
THIS VIOLATED PETITIONER'S RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE
UNITED STATES CONSTITUTION, AND THE FIFTH AND
FOURTEENTH, AND SIXTH AMENDMENTS THERETO.

Ground Fifteen: DEFENDANT WAS ENTITLED TO AN
EVIDENTIARY HEARING IN SUPPORT OF HIS PETITION
FOR POST-CONVICTION RELIEF, SINCE IS CONVICTION
WAS OBTAINED IN VIOLATION OF HIS FEDERAL AND
STATE CONSTITUTIONAL RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL AT TRIAL, AS IN THE
APPELLATE COUNSEL.

(Pet. ¶ 12, Grounds One to Fifteen.)

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives

the court jurisdiction to entertain a habeas petition as follows:

[A] district court shall entertain an application for a writ of habeas
corpus in behalf of a person in custody pursuant to the judgment of
a State court only on the ground that he is in custody in violation of
the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §

2254(d), limits a federal court's authority to grant habeas relief when a state court has

adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal

claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless

adjudication of the claim either involved an unreasonable application of clearly established

federal law, or was based on unreasonable determination of the facts in light of the evidence

before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

(d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court decision is an 'adjudication on the merits,' reviewed under the deferential standard of § 2254(d), where it is 'a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" Simmons v. Beard, 581 F. 3d 158, 166 (3d Cir. 2009) (quoting Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004), rev'd on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005) (internal quotation marks and citation omitted)); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412; see also Carey v. Musladin, 549 U.S. 70, 74 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of

this Court's applicable holdings").  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  See also Thomas v. Carroll, 581 F. 3d 118, 124 (3d Cir. 2009) (State court's determination was not contrary to federal law, as required for habeas relief, where Supreme Court never faced the precise issue presented in the case).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.[1]  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[2] Id. at 409-10; see also Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005). "[T]his Court has held on numerous occasions that it is not 'an

_____

[1] See also Wright v. Van Patten, 552 U.S. 120, __, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

[2] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  See <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1419 (2009).  Moreover, "a court that unreasonably extends a rule in a new context or, in the alternative, unreasonably fails to extend a rule may also be deemed to unreasonably apply the correct rule."  <u>Thomas</u>, 581 F. 3d at 124-25 (quoting <u>Fischetti v. Johnson</u>, 384 F. 3d 140, 148 (3d Cir. 2004)).

However, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim."  <u>Rolan</u>, 445 F. 3d at 678.  As the New Jersey courts adjudicated petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  <u>See</u> 28 U.S.C. § 2254(d).

## III.  DISCUSSION

### A.  Due Process - Grand Jury

In Grounds Eight and Nine, Petitioner contends that the indictment violated due process because the prosecutor failed to adequately instruct the grand jury on probable cause and the prosecutor failed to present exculpatory evidence.

The Fifth Amendment right to an indictment by a Grand Jury does not apply to State criminal prosecutions.  <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 477 n.3 (2000); <u>Albright v. Oliver</u>, 510 U.S. 266, 272 (1994); <u>Hurtado v. California</u>, 110 U.S. 516 (1884).  Because the Due Process Clause of the Fourteenth Amendment has not been construed to incorporate the Fifth Amendment right to indictment by a Grand Jury, <u>id.</u>, the legality of an indictment is a matter of

11

state law, see U. S. Wojtycha v. Hopkins, 517 F.2d 420, 425 (3rd Cir. 1975).[3]  Accordingly,

"there is no federal constitutional impediment to dispensing entirely with the grand jury in state

prosecutions."  Beck v. Washington, 369 U.S. 541, 545 (1962); see also Gerstein v. Pugh, 420

U.S. 103, 118-119 (1975) ("the accused is not 'entitled to [federal] judicial oversight or review of

the decision to prosecute").  Without offending the Constitution, State prosecutions may be

"instituted on informations filed by the prosecutor, on many occasions without even a prior

judicial determination of 'probable cause' - a procedure which has likewise had approval [of the

Supreme Court] in such cases as Ocampo v. United States, 234 U.S. 91, 34 S. Ct. 712, 58 L.Ed.

1231 (1914), and Lem Woon v. Oregon, 229 U.S. 586, 33 S. Ct. 783, 57 L.Ed. 1340 (1913)."

Beck v. Washington, 369 U.S. at 545; accord Rose v. Mitchell, 443 U.S. 545, 576 (1979) ("There

is no constitutional requirement that a state criminal prosecution even be initiated by a grand

jury").  Because Grounds Eight and Nine do not assert cognizable federal claims, Petitioner is not

entitled to habeas relief on these grounds.

## B.  Due Process - Instructions

Petitioner challenges the constitutionality of jury instructions in Grounds One and Two.

In Ground One, Petitioner contends that the failure to instruct the jury on the element of

territorial jurisdiction violated his due process rights, and in Ground Two, he maintains that the

supplemental instruction on accomplice liability to murder violated due process.  The

---

[3] Moreover, under New Jersey law, prosecutors are not generally required to provide the grand jury with evidence on behalf of the suspect, see State v. Hogan, 144 N.J. 216, 235 (1996), and an indictment should be disturbed only on the clearest and plainest ground.  See State v. Womack, 145 N.J. 576, 588 (1996).  Such a duty is triggered "only in the rare case in which the prosecutor is informed of evidence that both directly negates the guilt of the accused *and* is clearly exculpatory."  Hogan, 144 N.J. at 237.

government argues that these grounds involve state law and do not implicate the Constitution and, to the extent that they raise constitutional claims, the challenged instruction and the failure to instruct did not deprive Petitioner of due process.

In <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991), McGuire sought habeas relief from his state conviction for murdering his infant daughter.  He claimed that an instruction regarding the testimony of two physicians that the child had suffered child abuse (evidence of rectal tearing that was six weeks old and rib fractures that were seven weeks old) violated due process. Specifically, McGuire focused on the portion of the instruction explaining to the jury that the prior injury evidence "was received and may be considered by you only for the limited purpose of determining if it tends to show . . . a clear connection between the other two offense[s] and the one of which the Defendant is accused, so that it may be logically concluded that if the Defendant committed other offenses, he also committed the crime charged in this case."  <u>Id.</u> at 71.  The Supreme Court rejected the constitutional challenge to this instruction:

> McGuire argues that, despite the lack of any direct evidence linking him to those injuries, the instruction directed the jury to find that he had committed them. This claim is clearly foreclosed, however, by the language of the instruction. The challenged portion of the instruction included the words "if the Defendant committed other offenses." App. 41. By including this phrase, the trial court unquestionably left it to the jury to determine whether McGuire committed the prior acts; only if the jury believed he was the perpetrator could it use the evidence in deciding whether McGuire was guilty of the crime charged. Therefore, if the jury did not believe McGuire caused the prior injuries, he was not harmed by the challenged portion of the instruction. To the extent that the jury may have believed McGuire committed the prior acts and used that as a factor in its deliberation, we observe that there was sufficient evidence to sustain such a jury  finding by a preponderance of the evidence . . . .  The proof of battered child syndrome itself narrowed the group of possible perpetrators to

13

> McGuire and his wife, because they were the only two people
> regularly caring for Tori during her short life.

Estelle, 502 U.S. at 73-74.

This year, in Waddington v. Sauausad, 129 S. Ct. 823 (2009), the Supreme Court rejected

a habeas petitioner's claim that an accomplice liability instruction was so ambiguous as to violate

due process because the jury was confused about what elements had to be established in order for

the petitioner to be found guilty as an accomplice.  The Court summarized the law regarding the

constitutionality of state court instructions:

> Even if there is some ambiguity, inconsistency, or deficiency in the
> instruction, such an error does not necessarily constitute a due
> process violation.  Rather, the defendant must show both that the
> instruction was ambiguous and that there was " 'a reasonable
> likelihood' " that the jury applied the instruction in a way that
> [violated the Constitution]. Estelle, supra, at 72, 112 S.Ct. 475
> (quoting Boyde v. California, 494 U.S. 370, 380 . . . (1990)). In
> making this determination, the jury instruction "may not be judged
> in artificial isolation,' but must be considered in the context of the
> instructions as a whole and the trial record." Estelle, supra, at 72.
> Because it is not enough that there is some "slight possibility" that
> the jury misapplied the instruction, Weeks v. Angelone, 528 U.S.
> 225, 236 . . . (2000), the pertinent question "is 'whether the ailing
> instruction by itself so infected the entire trial that the resulting
> conviction violates due process,' " Estelle, supra, at 72, 112 S.Ct.
> 475 (quoting Cupp, supra, at 147, 94 S.Ct. 396).

Waddington, 129 S.Ct. at 831 -832 (2009) (citations and internal quotation marks omitted).

In Ground One, Petitioner contends that the failure to instruct the jury on the element of

territorial jurisdiction violated his due process rights.  In Ground Two, Petitioner asserts that the

supplemental instruction on accomplice liability to murder violated due process because it

allowed the jury to convict him of murder, absent direct participation in the crime, based on acts

performed after the murder, such as dumping the blanket or having Machado throw away Acevedo's jacket.

The United States Court of Appeals for the Third Circuit has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." Id. As the Third Circuit explained,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. *See McMillan v. Pennsylvania,* 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).

> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state

15

supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

Petitioner is not entitled to habeas relief on Ground One because he does not point to a federal requirement that jury instructions must include the element of territorial jurisdiction, nor does he show that the absence of this instruction deprived him of a defense which federal law provided to him.[4]  See Johnson, 117 F.3d at 111.  Petitioner is not entitled to habeas relief on Ground Two because he has not shown that the supplemental jury instructions on murder relieved the state of the necessity of proving an element of the offense as required by federal law or deprived Petitioner of a defense the state had to afford him under federal law.  And "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."[5]

Estelle, 502 U.S. at 71-72; see also Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief").  Based on the

---

[4] Even if the failure to instruct the jury on the element of territorial jurisdiction stated a constitutional claim, Petitioner would not be entitled to relief.  Although the Appellate Division reversed the convictions for racketeering and theft by extortion on the ground that the trial court erred by failing to instruct on territorial jurisdiction, the record establishes that the State elected not to retry these charges.  While the record shows that the trial court did not instruct on the issue of territorial jurisdiction regarding the offenses of murder, hindering apprehension and second-degree kidnapping, the Appellate Division ruled that New Jersey law did not require a jurisdiction instruction for these offenses.  See State v. Casilla, Docket No. A-1274-00T4 slip op. at p. 9

[5] The Appellate Division ruled on direct appeal that the supplemental instruction was not plain error under New Jersey law.  See State v. Casilla, Docket No. A-1274-00T4 slip op. at p. 27.

foregoing, Petitioner has not shown that the state courts' adjudication of his claims challenging the instructions was contrary to, or an unreasonable application of Supreme Court precedent.

C.  Due Process - Admission of Wiretap Evidence

In Ground Three, Petitioner argues that his due process rights were violated by the trial court's failure to suppress the wiretaps on the ground that the state police failed to make reasonable efforts to assure they were not intercepting calls where both parties to the conversation were outside New Jersey.  Respondents assert that the Due Process Clause does not require state police to make reasonable efforts to assure that they do not intercept telephone calls where both parties are outside New Jersey and that Ground Three is not relevant to the offenses for which Petitioner was ultimately convicted, i.e., murder, kidnapping and hindering prosecution.

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."  Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983).  The admissibility of evidence is a question of state law which is not cognizable under habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").  Moreover, this Court is not aware of any Supreme Court case clearly establishing that the admission of such wiretap evidence in a state criminal prosecution constitutes a violation of federal rights.  Because

17

the admission of the wiretap evidence was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under Ground Three.[6]

## D.  Ineffective Assistance of Trial Counsel

Petitioner raises ineffective assistance of trial counsel claims in Grounds Four, Five, Six, Seven, and Ten, arguing that counsel was constitutionally deficient in failing to move to suppress Petitioner's custodial statement (Ground Five), failing to move to suppress the evidence obtained as a result of Petitioner's warrantless arrest (Ground Four), failing to challenge the legality of Petitioner's warrantless arrest (Ground Six), failing to challenge the validity of the indictment (Ground Seven), and failing to make appropriate objections to hearsay evidence, other crimes evidence and prejudicial statements made by the decedent and unindicted co-conspirators (Ground Ten).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

---

[6] Moreover, as Respondents correctly contend, the wiretap evidence was not relevant to the crimes for which Petitioner was ultimately convicted.  The Appellate Division determined on direct appeal that "even if the trial court erred in refusing to suppress the wiretap evidence, this would not affect defendant's convictions for murder, kidnapping and hindering prosecution or apprehension because the wiretaps did not produce any evidence relevant to those offenses." State v. Casilla, Docket No. A-1274-00T4 slip op. at p. 29.

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one."  Strickland,

466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

Petitioner presented his ineffective assistance of counsel claims in his petition for post-

conviction relief.  The Appellate Division considered and rejected each claim under Strickland:

> As noted by Judge DeVesa, defendant's allegations of trial error
> are either unsupported by the record, were addressed on appeal, or
> do not meet either prong of the Strickland test to establish a claim
> for ineffective assistance of counsel . . . .
>
> Contrary to defendant's assertions, trial counsel did argue the
> legality of defendant's arrest in New York City, contending the
> police lacked probable cause.  The trial court rejected the
> argument, finding the evidence available to the police at that time
> "overwhelmingly suggest[ed] that [defendant] was somehow
> involved in the kidnapping and the murder of Eddie Acevedo."
> Defendant's second assertion, that his trial counsel failed to file a
> motion to suppress his confession, is also belied by the record.  A
> lengthy Miranda hearing was conducted, during which
> uncontroverted testimony was presented that defendant was read
> warnings twice in Spanish, defendant's primary language, by a
> Spanish-speaking detective.  The trial judge found defendant was
> apprised of his Miranda warning, his subsequent statements were
> voluntary, and under the totality of the circumstances the
> confession was admissible.  Defendant's assertion that his trial
> counsel failed to object to the sufficiency of the indictment is also
> not factually supported.  To the contrary, defense counsel filed a
> motion to dismiss various counts of the indictment on August 30,
> 1999, which was denied.
>
> The instructions on accomplice liability were sustained on
> defendant's direct appeal and thus cannot be reconsidered in a
> subsequent PCR application.  R. 3:22-5.  Moreover, although
> defendant's claims of trial counsel's deficiency in failing to make
> hearsay objections should have been raised on direct appeal,
> nonetheless, Judge DeVesa reviewed each of the instances asserted
> in defendant's PCR petition and determined that the majority of
> them met an exception to the hearsay rule.  As to the others, the
> court was satisfied that counsel was entitled to deference in terms

of strategy by not repeatedly objecting to all possible types of
hearsay.

State v. Casilla, Docket No. A-2994-05T4 slip op. at pp. 3-5 (N.J. Super. Ct., App. Div., June 11, 2007).

The foregoing shows that the New Jersey courts reasonably applied the Supreme Court's holding in Strickland and its progeny.  Accordingly, the New Jersey courts' adjudication of Petitioner's ineffective assistance of counsel claims was not contrary to, or an unreasonable application of Strickland and other Supreme Court holdings.  Petitioner is therefore not entitled to habeas relief on Grounds Four, Five, Six, Seven and Ten.

E.  Ineffective Assistance of Appellate Counsel

In Grounds Eleven and Twelve, Petitioner asserts that appellate counsel was constitutionally ineffective in failing to challenge the admission of hearsay, failing to challenge the admission of Petitioner's confession, failing to challenge the admission of evidence resulting from his warrantless arrest, and failing to challenge the sufficiency of the indictment.

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, Evitts at 396.  The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).  Defense counsel has a constitutionally imposed duty to consult with the defendant about whether to appeal when "there is reason to think either (1) that a rational

21

defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  The term "'consult' convey[s] a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega at 478.

The allegedly deficient performance in this Petition is based on counsel's failure to present certain claims on direct appeal.  However, "it is a well established principle that counsel decides which issues to pursue on appeal." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996). Appellate counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288.  The Appellate Division rejected Petitioner's ineffective assistance of appellate counsel claims for this very reason.  The Appellate Court ruled:

> It is well within the discretion of appellate counsel to limit the number of arguments raised on appeal to put forth his or her client's best points.  Indeed, the partial success achieved by defense counsel on appeal suggests that appellate counsel advanced strong arguments on his client's behalf.  Appellate counsel cannot be faulted for making a tactical decision not to raise losing arguments on appeal, such as the legality of defendant's arrest or the suppression of defendant's statement.

State v. Casilla, Docket No. A-2994-05T4 slip op. at p. 5.

Under these circumstances, Petitioner cannot show that the adjudication of his ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, Supreme Court precedent.  See Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).

F.  Ineffective Assistance of Post-Conviction Relief Counsel

In Ground Fourteen, Petitioner asserts that the attorney who represented him in his state petition for post-conviction relief was constitutionally ineffective.  However, the alleged ineffectiveness of counsel on post-conviction relief is not cognizable under § 2254.  See 28 U.S.C. § 2254(i).  Section 2254(i) provides:  "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Because Ground Fourteen concerns only the ineffectiveness of post-conviction relief counsel, a claim that is not cognizable under § 2254, Petitioner is not entitled to habeas relief on Ground Fourteen.

G. Denial of Evidentiary Hearing and Relief on PCR

In Ground Fifteen, Petitioner claims that the post-conviction relief court erred in failing to conduct an evidentiary hearing.  In Ground Thirteen, Petitioner argues that the post-conviction relief judge erred in denying relief.  Petitioner has no federal right to an evidentiary hearing or to other relief by a state post-conviction relief court.  This Court accordingly lacks jurisdiction over Grounds Thirteen and Fifteen.

H.  Certificate of Appealability

This Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.

s/Freda L. Wolfson
**FREDA L. WOLFSON, U.S.D.J.**

Dated:   December 10, 2009